RECEIVED
BY MAIL

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

APR 2 8 2021

CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

| | |
|---|---|
| **JOSEPH ANTHONY FAVORS,** | ) **COURT FILE NO:** _2 cv 1102 WMW/KMM_ |
| **PLAINTIFF,** | ) **CASE TYP:** <u>**PRODUCT LIABILITY LAW SUITE**</u> |
| **Vs.** | ) **MAGISTRATE:** _____ |
| | ) **JUDGE:** _____ |
| **SUNMARK PRODUCTS BY ---** | ) |
| **McKESSON ,** | ) **COMPLAINT FOR PRODUCT LIABILITY AND** |
| | ) **MONATARY RELIEF/ DEMAND FOR JURY TRIAL** |
| **DEFENDANT.** | ) |
| | ) |
| | ) |

## **INTRODUCTION**

**1.** This matter comes before the United States District Court, District of Minnesota, upon the Complaint filed by Plaintiff, <u>Joseph Anthony Favors</u> (herein after "Favors" or "Plaintiff"), alleging that Defendant, *"Sunmark Products by McKesson"* located at 1930 Abbott Street #4, Charlotte, North Carolina (28203); Phone: #855-855-1666 Distributors intentionally failed to put any kind of labeling to warm Plaintiff (the consumer) that their product *"Ranitidine" (Zantac)* contained unacceptably high levels of nitrosamine contaminant ("N-nitrosodimethylamine")

SCANNED

["NDMA"] that Defendants knew was a deadly contaminant and caused all kinds of health problems, terminal cancer in human beings in its history and to this day. Thereby Defendants knowingly and willfully exposed Plaintiff's life to extreme risk of danger resulting from unacceptable high levels of nitrosamine contaminant with Plaintiff's daily consumption of *"Ranitidine" (Zantac)* for heartburn over several years' time! See, <u>*Nowak By And Through Nowak v. Faberge USA Inc.,*</u> 32 F3d 755 (3rd Cir. 1994)(*"Supplier of product is guarantor of it's safety."*); See, <u>*Hidalgo v. Fagen, Inc.*</u> 206 F3d 1013 (10th Cir. 2020) (*"The sine qua non of a strict liability claim is the 'sale' of a product"*).  Here, applying <u>*Hidalgo v. Fagen, Inc*</u> and <u>*Nowak By And Through Nowak v. Faberge USA Inc.,*</u> id.  demonstrates that both case laws apply in this case where Defendants Sunmark Products and McKesson Distributors are liable because they "sold" Plaintiff the *"Ranitidine" (Zantac).*  There was no labeling or warning on the bottle.

2.    Plaintiff is suing Defendant, Sunmark Products by McKesson for violation of long established Product Liability state and federal statutes.

### *JURISDICTION*

3.    Plaintiff brings Claims against Defendant, Sunmark Products by McKesson for *Negligence or Gross Negligence* (Count I & II), *Fraud and/or Fraudulent Concealment* (Count III & IV), and *Negligent Misrepresentation* (Count V).

**4.**     Jurisdiction is based upon the following Statutes:

**1)** Section §1986 (failure to prevent deprivation of rights);

**2)** Section §1988 (applicability of statutory and common law rights);

**3)** Section 28 U.S.C. § 1331 (federal question);

**4)** Section 28 U.S.C. §1343 (to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights);

**5)** And on the pendent jurisdiction of this Court to entertain claims arising under State law pursuant to 28 U.S.C. § 1367.

### *VENUE*

**5.**     This Court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the material events and occurrences giving rise to Plaintiff's cause of action occurred within the State of Minnesota.

### *STATUTE OF LIMITATIONS*

**6.**     Plaintiffs' tort and fraud claims are timely to the extent they are based on transactions that occurred not more than six years prior to the filing of this Complaint.

**7.** With the exception of the potential claims for fraud and fraudulent concealment as applied under Minnesota law, the tort and fraud claims are subject to a six-year statute of limitations.   See, MSA §15C.11 Limit of Actions: Remedies:

(a) An action under this chapter may not be commenced more than three years after the date of discovery of the fraudulent activity by the prosecuting attorney or more than six years after the fraudulent activity occurred, whichever occurs later, but in no event more than ten years after the date on which the violation is committed.

(b) A finding of guilt in a criminal proceeding charging a false statement or fraud, whether upon a verdict of guilty or a plea of guilty or nolo contendere, stops the person found guilty from denying an essential element of that offense in an action under this chapter based upon the same transaction as the criminal proceeding.

(c) In an action under this chapter, the state or the political subdivision and any plaintiff under section 15C.05 must prove the essential elements of the cause of action, including damages, by a preponderance of the evidence.

**8.**     Here, the subject incidents of this Complaint occurred April 2015 to about December 2018.  This Complaint was filed on April 25, 2021, and the statute of limitations runs until December 2024.   Any claims that accrued more than six years prior to the respective filing date are potentially untimely.

**9.**     "The usual rule [in Minnesota] is that a cause of action in tort accrues at the time the plaintiff sustains some injury as the result of a wrongful act on the part of the defendant." _Arthur D. Little_, 928 F.Supp. at 1203. *"However, if the injury or its cause was not immediately apparent, the {2013 U.S. Dist. LEXIS 56}'discovery rule'*

*applies and the cause of action does not accrue until the plaintiff knew or could have known of both the injury and the cause of the injury."* Id. (citations omitted). Likewise, claims of fraud accrue when the plaintiff knew or should have known about the alleged fraudulent act, which was not until about December 2018 for this Plaintiff.  This *"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances."* Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996). The doctrine of equitable tolling may be applied *"as a matter of fairness where the plaintiff has been 'prevented in some extraordinary way from exercising his rights, or has asserted his rights in the wrong forum.'"* Id. (quoting Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 24 (2d Cir. 1985)) (punctuation omitted).  Here, Plaintiff cannot afford legal assistance, so he took longer to file this Complaint pro se.

**10.**    Plaintiff alleges that the actions and omissions giving rise to his Claims began at least on or about  mid-2016, when Plaintiff underwent his first surgical procedure to remove the *"malignant"* cancerous tissue from his colon.  (See, exhibit #7; the hospital examination of the tissue removed from Plaintiff).  To maintain his tort and Minnesota fraud Claims, he must submit facts demonstrating that his Claims accrued before the December 2022 cutoff dates or that the statutes of limitations were otherwise tolled, which they were in this case until December 2024.

**11.**    With respect to equitable tolling, as the _Szulik_ court held, "the plaintiff' claim that Defendant, Sunmark Products by McKesson concealed critical information about the harmful contaminant "nitrosamine" contained in their product (_"Ranitidine" (Zantac)_ raises a question of **_fact_** as to whether, in fairness, the six-year statute of limitations should be tolled." See, _Szulik_, 2013 U.S. Dist. LEXIS 42622, 2013 WL 1301064, at *29.

**12.**    At this stage, this Court should find that Plaintiffs' tort and fraud claims are not barred by the relevant statute of limitations.

### _STANDING_

**13.**    Plaintiffs argues the federal Circuit Courts have unequivocally determined in medical monitoring cases such as this that **_exposure to contaminated products_** or a medical device with a risk of failure **_constitutes an injury-in-fact_**.

**14.**    It is well settled that exposure to toxic substances is sufficient for purposes of Article III standing.   See, _Reilly v. Ceridian Corp._, 664 F.3d 38, 45 (3d Cir. 2011) (reasoning _"exposure to a toxic substance causes injury; cells are damaged and a disease mechanism has been introduced."_); See, _Carlough v. Amchem Prods., Inc._, 834 F. Supp. 1437, 1447, 1454 (E.D.Pa.1993) (holding that persons who have been exposed to asbestos but do not manifest any asbestos-related conditions _"have alleged sufficient injury in fact"_ to seek medical monitoring); See, _Brown v. C.R. Bard,_

*Inc.*, 942 F. Supp. 2d 549, 552 (E.D. Pa. 2013) (concluding the plaintiffs had suffered an injury in fact sufficient for their medical monitoring claims because they alleged the filters implanted in them were at risk of fracturing at some point in the future); See, *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d at 851, 851-852 (explaining that *"persons exposed to toxic chemicals emanating from the landfill have an increased risk of invisible genetic damage and a present cause of action for their injury"* because *"in a toxic age, significant harm can be done to an individual by a tortfeasor, notwithstanding latent manifestation of that harm."*). Plaintiffs' allegations that  he consumed *"Ranitidine" (Zantac)* contaminated with unexcitable high, dangerous levels of nitrosamine contaminant ("N-nitrosodimethylamine") ["NDMA"] that Defendants knew was a deadly contaminant and caused all kinds of health problems, terminal cancer in human beings.  Thereby Defendants knowingly and willfully exposed  Plaintiff to extreme risk of death building up inside him, resulting from accumulated extremely high levels of nitrosamine contaminant due to Plaintiff's ***daily*** consumption of *"Ranitidine" (Zantac)* for heartburn and bad indigestion / stomach  gas over several ***years' time*** unaware of the contaminations in it.  Thereby Plaintiff, apparently, being so disposed,  suffered genetic and cellular damage easily satisfy Article III's requirement that Plaintiff alleges an *"identifiable trifle"* of an injury.

**15.**   Plaintiff objects to Defendants' arguments, right now, that assert because some *part of one sentence* in Plaintiffs' thirty-paged Complaint makes a speculative claim of harm, the whole Complaint should be dismissed on the grounds that it ignores the numerous allegations in this Complaint that the named Plaintiff consumed *"Ranitidine" (Zantac)*  contaminated with NDMA or NDEA and thereby unaware he was repeatedly exposed to carcinogens ***for years daily***.   Defendants' aforesaid anticipated arguments conflate the legal sufficiency of Plaintiffs' causes of action with Article III standing. See, <u>*Carlough v. Amchem Prods.*</u>, 834 F. Supp. 1437, 1450 (E.D. Pa. 1993) (explaining *"the question of whether the exposure-only plaintiff has  standing to bring this lawsuit in federal court does not depend on whether they have stated a valid cause of action under applicable tort law."*).


**16.**   Manufacturers like Defendant Sunmark Products by McKesson, have argued that Plaintiffs' injuries are not fairly traceable to the Manufacturer Defendants challenged conduct and therefore the NDMA or NDEA should be dismissed because they do not satisfy Article III standing. Specifically, with no Manufacturer Defendant of the NDMA  or NDEA as to whom no Plaintiff alleges a traceable injury; likewise, there can be no Distribution Defendant of the NDMA or NDEA as to whom Plaintiff does,  allege a traceable injury.  However, based on the finding of. <u>*Nowak By And Through Nowak v. Faberge USA Inc.*</u>, 32 F3d 755 (3rd Cir. 1994)(*"Supplier of product is guarantor of it's safety."*);  And, <u>*Hidalgo v. Fagen, Inc.*</u> 206 F3d 1013 (10th Cir. 2020)

(*"The sine qua non of a strict liability claim is the 'sale' of a product"*).   Here, Defendant is liable for the *"sale" of NDMA  contaminated products* as the manufacture and Distributor (Sunmark Products by McKesson)

**17.**    In a similar vein, Plaintiff alleges the Wholesaler Defendant McKesson Distributors are liable where  Plaintiff has established the Article III traceability requirement as to them,  because there the Wholesaler (who is the Manufacture) is a *"but for"* cause of or a *"substantial factor"* in causing the purported injuries, even though they may not have had direct influence or control over the manufacturing processes.

**18.**    Plaintiff does not allege that anyone is liable to him due to traceability satisfied by a *"market share theory,"*  because it has been rejected in products liability cases.

**19.**    Plaintiff has standing because he: " *(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, based on exposure to NDMA contaminations for years, and (3) that is likely to be redressed by a favorable judicial award of substantial monetary compensation,"*  where the injury/damage done to Plaintiff is irreversible/cannot be undone or fixed, and is likely/possibility to return in his physical anatomy and cause his death in the future having been

exposed to it for years, and had to have it surgically removed, or he's be dead ---

NOW!  See, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016).

**20.**    In *Spokeo*, 136 S. Ct. at 1548, the Supreme Court of the United States reiterated that *"[a] 'concrete' injury must be 'de facto''; that is, it must actually exist."* It also stated  that *"'[c]oncrete' is not . . . necessarily synonymous with 'tangible.'"* *Id.* at 1549.  Instead, *"the violation of a procedural right granted by statute [such as in this case, Product Liability, warning Labeling of dangerous cancer causing substances like "NDMA,"] can be sufficient in some circumstances to constitute injury in fact." Id.*

**21.**    As in this case, *"Among those circumstances are cases where a statutory violation creates the 'risk of real harm.'"*    See, *Bowse v. Portfolio Recovery Assocs., LLC*, 218 F. Supp. 3d 745, 749 (N.D. Ill. 2016) (quoting *Spokeo*, 136 Supreme Court of the United States at 1549).

**22.**    Plaintiff alleges that Defendants' violations raised herein this Complaint exposed Plaintiff to a real risk of death from cancer due to their  product containing unacceptable  levels of cancer causing *"NDMA."*  Completely unaware of the dangerous levels of cancer causing *"NDMA"* it contained, because none of this information was  given on the product labeling or bottle what-so-ever.   The letters "N-D-M-A"  do not exist on Defendants' bottle of *"Ranitidine" (Zantac).*  (See, exhibit

#6; actual bottle half empty from Plaintiff's consumption).   This evidence demonstrates Plaintiff's claim that there is no warning or labeling what-so-ever on the bottle that discloses any information that this product contains high levels of *"NDMA"* or the risk of harm or death related to its consumption.

### ***FACTUAL ALLEGATIONS***

**23.**   Plaintiff is seeking substantial monetary relief from Defendant, *"Sunmark Products by McKesson"* for Plaintiff's near death experience as a result of daily consumption of *"Ranitidine" (Zantac)* for heartburn for several years.

**24.**   Because Defendant, Sunmark Products by McKesson have absolutely no warning or labeling on a bottle of *"Ranitidine" (Zantac).*  Plaintiff was  completely unaware of the *"NDMA"* contamination contained in *"Ranitidine" (Zantac).*

**25.**   At the time Plaintiff was using *"Ranitidine" (Zantac)* daily for heartburn, he noticed blood in his stool, and went in for a doctor examination of the problem.

**26.**   The doctor suggested that Plaintiff undergo a colonoscopy surgical procedure, which Plaintiff agreed to have performed on him to find out what the problem was.

**27.**   On a day to be determined, Plaintiff went in to the hospital and the doctor performed a surgical colonoscopy procedure on Plaintiff.  At this time, Plaintiff continued to use *"Ranitidine" (Zantac)* daily, more than once a day for heartburn.  It

seemed to be the only thing that worked well for his heartburn, and was fast acting. Plaintiff had suggested use of it to several others for heartburn over the years.

**28.** Plaintiff was not awake for the surgical colonoscopy procedure. The doctor took color photos of Plaintiff's colon parts during the procedure.

**29.** After the procedure, the doctor showed Plaintiff the color photos of his colon areas, and told Plaintiff, Quote: *"You are very lucky you had this procedure done at this time. I found cancer causing pile ups in your colon."* After the tissue was examined, the doctor (Dr. Stillwell, M.D.) told Plaintiff it was *"malignant tissue that causes cancer and it would have been fatal if we had not caught it and removed it when we did."* Plaintiff asked if it would come back in the future. Dr. Stillwell replied, *"I don't know. There is no way of knowing that for sure, but it is possible. It has before."*

**30.** The doctor showed Plaintiff the color photographs, and pointed to the cancer causing substance that was in his colon before the doctor surgically removed it. The *"malignant"* cancer causing tissue is visible in the picture. (See, exhibit #2; the photos).

**31.** Weeks later, after the procedure, Plaintiff received a medical report with the results of the cancer causing pile ups removed during the medical procedure. The

medical report informed Plaintiff that the tissue removed from his colon was *"abnormal,"* because it was *"malignant."* (See, exhibit #3; the medical report).

32.    Dr. Stillwell required Plaintiff to return to the hospital to discuss the test results with the doctor.    At that time and hospital visit, Dr. Stillwell asked Plaintiff what medications and pills he was on daily.  When the doctor heard Plaintiff used *"Ranitidine" (Zantac)* daily, he informed Plaintiff that it contained *"NDMA"* and that exposure to that for as long as Plaintiff was consuming *"Ranitidine" (Zantac)* daily that Plaintiff's cells were indeed damaged and a disease mechanism had been introduced that cause the cancerous tissue Plaintiff had removed by Dr. Stillwell. And that was a *fact,* and grounds for a lawsuit.

33.    The doctor advised Plaintiff to immediately stop using *"Ranitidine" (Zantac)*, at least until Plaintiff came back for his next colonoscopy in one year.  The doctor explained that was one year was a very short time period for a second procedure, but it was best to have it done again soon in case the cancer causing tissue returned.

34.    In one year, with no use of *"Ranitidine" (Zantac)* during that time,  Plaintiff underwent another colonoscopy surgical procedure in the same hospital.  (See, exhibit #4; medical report).   Again, the doctor took color pictures of Plaintiff's colon, and later showed the photos to Plaintiff and informed Plaintiff the cancerous

tissue had not again developed. At this time, Plaintiff had no use of *"Ranitidine"* *(Zantac)* for over twelve (12) months, which apparently caused to form. (See, exhibit #5; the photographs of Plaintiff's cancer free colon during this second procedure.

### *DAMAGES*

**35.** As a result of Defendant's *"Ranitidine"* *(Zantac)* product, and the Defendant's willful/criminal recklessness failure to include any warning labeling on the bottle to inform Plaintiff of the high levels of cancer causing *"NDMA"* contained in *"Ranitidine"* *(Zantac)*, Plaintiff suffered physical injury, and was nearly killed by his daily intake of *"Ranitidine"* *(Zantac)*.

**36.** Plaintiff, also suffered actual emotional and psychological harms resulting from, paranoia of death and nightmares with the entire ordeal for which Plaintiff seeks / is entitled to substantial monetary compensation and which must be rectified, accordingly.

**37.** Consequently, Plaintiff's injury is concrete (he had to undergo a surgical procedure to have the cancerous tissue removed, and again hospitalized one year later for another surgical procedure. That fact, alone, is actionable, grounds for monetary compensation, such as *"repair surgery."*

**38.**    Therefore, Plaintiff has satisfied all elements of Standing pursuant to the Supreme Court of the United States.  *See Spokeo*, 136 S. Ct. at 1547.

**39.**    Plaintiff has raised a *genuine issue* as to his physical and *emotional harm* by testimony that he was exposed to a harmful contaminant that has no other effect but to harm Plaintiff's internal cells.  Plaintiff was twice hospitalized, ___**infuriated, angry,**___ ___**upset and felt an injustice had been done.**___  Plaintiff was caused to undergo two life-saving surgical procedures without which he would have been dead by now that must be rectified. with substantial monetary compensation.

**40.**    Plaintiff has placed these losses/injuries at issue in this case, and is entitled to attempt to prove the value thereof to be determined by the jury at trial.

### ***STATUTORY DAMAGES***

**41.**    In calculating an appropriate statutory damages award, the district court considers *"the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."* See, <u>15 U.S.C. 1692k</u>(b)(1).  Here, Defendant continues to sale their product to this day with no label to warn consumers of the harmful *"MDNA"* it contains, despite dozens of lawsuits like this one across the United States.

## **_CLAIMS FOR RELIEF_**

### **_COUNTS ONE AND TWO:_**
### **_NEGLIGENCE AND/OR GROSS NEGLIGENCE_**

**42.** Paragraphs (1) through (41) above to the last paragraph of this Complaint, all Exhibits, Additional Claims, Factual Allegations, and other Evidence adduced by Plaintiff in this case are incorporated herein by reference as though fully set forth, and Plaintiff further alleges:

**43.** Based on the forgoing "Factual Allegations," Plaintiff is suing Defendant, Sunmark Products by McKesson in their personal/individual capacities for _Negligence_ and/or _Gross Negligence_ in violation of federal and state Statutes.

**44.** Plaintiff generally alleges that Defendant, Sunmark Products by McKesson was either _negligent or grossly negligent_, where Defendant willfully violated product safety laws resulting from their failure to provide any warning label about the cancer causing _"NDMA"_ contained in _"Ranitidine" (Zantac)_, See, _Nowak By And Through Nowak v. Faberge USA Inc._, 32 F3d 755 (3rd Cir. 1994)(_"Supplier of product is guarantor of it's safety."_); See, _Hidalgo v. Fagen, Inc._ 206 F3d 1013 (10th Cir. 2020) (_"The sine qua non of a strict liability claim is the 'sale' of a product"_). See, _Bowse v. Portfolio Recovery Assocs._, LLC, 218 F. Supp. 3d 745, 749 (N.D. Ill. 2016) (quoting

*Spokeo*, 136 Supreme Court of the United States at 1549) (*"Among those circumstances are cases where a statutory violation creates the 'risk of real harm,'"*) such as in this case.

**45.**     At this juncture, Plaintiff has pled sufficient facts that Defendant, Sunmark Products by McKesson,  owed separate duties to ensure that Plaintiff was aware of the risk of harm from consumption of the product (*"Ranitidine" (Zantac)*,  for years daily, but  failed that duty.

**46.**     Accordingly,  this  Court  should  recommend  that  Plaintiffs'  claims  for *Negligence and/or Gross Negligence* (Count II & III) proceed to trial on the merits.

### COUNT THREE AND FOUR:
### *FRAUD AND/OR FRAUDULENT  CONCEALMENT*

**47.**     Paragraphs (1) through (46) above to the last paragraph  of this Complaint, all Exhibits, Additional Claims, Factual Allegations, and other Evidence adduced by Plaintiff in this case are incorporated herein by reference as though fully set forth, and Plaintiff further alleges:

**48.**     Based on the forgoing "Factual Allegations" by Plaintiff against Defendant, Sunmark Products by McKesson stated above, Plaintiff is suing Defendant, Sunmark

Products by McKesson in their personal/individual capacities for *Fraud and/or Fraudulent Concealment* in violation of federal and state Statutes.

49.    Plaintiff alleges that, despite a duty to disclose the potential risk of serious harm or even death to Plaintiff as a direct result of exposure to/the consumption of Defendants' product, specifically, *"Ranitidine" (Zantac))*, Defendant, Sunmark Products by McKesson fraudulently concealed that information from Plaintiff (the consumer) and, communicated nothing on the label of the product that it contained high levels of *"NDMA"* contamination.

50.    Plaintiff base this claim on his daily consumption of *"Ranitidine" (Zantac)* for heartburn and indigestion gas problems for several years until about 2018, when he underwent a surgical procedure on his colon for cancer and indeed had cancerous tissue removed that would have killed Plaintiff for certain.    Defendant's willful/criminal reckless / decision to "sale" this product to Plaintiff with the omission of any and all warning constituted a willful act of product misrepresentation  as to the product's known high levels of cancer causing *"NDMA"* contamination.    Defendants willfully subjected Plaintiff to risk of harm and even death from regular daily consumption of *"Ranitidine" (Zantac)*.  The law required Defendants to disclose that information, but they concealed it from Plaintiff and it

did not/does not yet appear on the label of the bottle to this very day!  Despite this lawsuit.

**51.**   The parties agree that Federal Rule <u>9</u>(b) of the Federal Rules of Civil Procedure governs this claim.   Pursuant to Rule 9(b), a party must state *"with particularity the circumstances constituting fraud."*  Fed. R. Civ. P. <u>9</u>(b). Rule 9(b) requires that a plaintiff's averments of fraud *"specify the time, place, and content of the alleged false or fraudulent representations."* See, <u>United States ex rel. Karvelas v. Melrose-Wakefield Hosp.</u>, 360 F.3d 220, 226 (1st Cir. 2004). The purpose of this requirement is to *"give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery."* <u>Id.</u> (quoting See, <u>*Doyle v. Hasbro, Inc.*</u>, *103 F.3d 186*, 194 (1st Cir. 1996)).  Thus, Plaintiff's pleadings of fraudulent concealment *"tell who said (or failed to say) what, when, and where"* and "also says, at the very least, how any such statements materially affected the plaintiff's decision" to purchase *"Ranitidine" (Zantac)* for daily consumption, under the impression it was safe to do so with no disclaimer or warning on the bottle what-so-ever! See, <u>Varney v. R.J. Reynolds Tobacco Co.</u>, 118 F. Supp. 2d 63, 68 (D. Mass. 2000).

**52.**   A cause of action to recover damages for fraudulent concealment requires, in addition to scienter, reliance, and damages, a showing that there was a fiduciary or confidential relationship between the parties which would impose a duty upon the defendant to disclose material information relevant to Plaintiff's daily use of the product.  Defendant failed to do so.   See, *High Tides*, 88 A.D.3d at 957; *See also JSB Indus., Inc. v. Nexus Payroll Servs., Inc.*, 463 F. Supp. 2d 103, 107 (D. Mass. 2006) (Unless there is a duty to disclose, the failure to disclose information is not actionable.).   Here, Defendants had a duty under state and federal product protection laws to disclose to Plaintiff that *"Ranitidine" (Zantac)* contained cancer causing *"NDMA"* contamination.  For example, but not limited to, see, *Nowak By And Through Nowak v. Faberge USA Inc.*, 32 F3d 755 (3rd Cir. 1994)(*"Supplier of product is guarantor of it's safety."*); See, *Hidalgo v. Fagen, Inc.* 206 F3d 1013 (10th Cir. 2020) (*"The sine qua non of a strict liability claim is the 'sale' of a product"*).

**53.**   Thus, Plaintiffs' fraudulent concealment claims do not fail to satisfy Rule 9(b)'s heightened standard.  With respect to Defendant, Sunmark Products by McKesson purported duty to disclose product safety information, Plaintiff alleges that Defendant, Sunmark Products by McKesson (the "seller") owed a duty to Plaintiff arising from the business relationship between Defendant, Sunmark Products by McKesson and Plaintiff (the consumer) of their product, the specific knowledge that Defendant, Sunmark Products by McKesson had that *"Ranitidine"*

*(Zantac)* contained cancer causing *"NDMA"* contamination, but concealed that knowledge from Plaintiff.

54.     Plaintiffs' positions are non-starters.  Plaintiff does plead, with an amount of particularity, the existence of a duty arising from the specific knowledge that Defendant, Sunmark Products by McKesson had that *"Ranitidine" (Zantac)* contained cancer causing *"NDMA"* contamination.  Moreover, product safety laws impose an obligation on Defendant, Sunmark Products by McKesson to disclose any information that was known to them at the time of their *"sales"* to Plaintiff regarding cancer causing *"NDMA"* contamination of their product.  Specially, *"Ranitidine" (Zantac)*.  That information was not irrelevant to the customer (Plaintiff), and Defendant's intent and purpose was for Plaintiff to buy  and consume  as much of their product  *"Ranitidine" (Zantac)* as he wanted daily.

55.     Plaintiff argues that *"[f]ragmentary information may be as misleading … as misrepresentation, and half-truths may be as actionable as whole lies,"*  about the *"Ranitidine" (Zantac)* Defendants were aware of about this product.  See, <u>Greenleaf Arms Realty Trust 1, LLC v. New Boston Fund, Inc.,</u> 81 Mass. App. Ct. 282, 962 N.E.2d 221, 230 (Mass. App. Ct. 2012); See, <u>Accord ADL, LLC v. Tirakian</u>, No. 2006-5076, 2010 U.S. Dist. LEXIS 110563, 2010 WL 3925131, *15 (E.D.N.Y. Aug. 26, 2010). *"[T]hough there may be no duty otherwise imposed, if a party does speak to a given*

*point of information, voluntary or otherwise, he is bound to speak honestly and divulge*

*all the material facts bearing upon the point that lie within his or her knowledge."*

See, *Greenleaf Arms*, 962 N.E.2d at 230.


**56.**    Accordingly, this Court should recommend that Plaintiffs' claims for *Fraud*

*and/or Fraudulent Concealment* (Count III & IV) proceed to trial on the merits.


**_COUNT FIVE:_**

      **_NEGLIGENT MISREPRESENTATION_**

**57.**    Paragraphs (1) through (56) above to the last paragraph  of this Complaint,

all Exhibits, Additional Claims, Factual Allegations, and other Evidence adduced

by Plaintiff in this case are incorporated herein by reference as though fully set

forth, and Plaintiff further alleges:


**58.**    Based on the forgoing "Factual Allegations" against Defendant, Sunmark

Products  by McKesson   stated above, Plaintiff is suing Defendant, Sunmark

Products by McKesson in their personal/individual capacities for *Negligent*

*Misrepresentation* in violation of federal and state Statutes.


**59.**    Plaintiff asserts claims for negligent misrepresentation.   Specifically, he

alleges that Defendant, Sunmark Products by McKesson misrepresented: (1) the

product safety information about *"Ranitidine" (Zantac);* (2) that Defendants were in the business of producing qualified and safe product but failed to provide any warning labeling  necessary; (3) that Defendant, Sunmark Products by McKesson had marketed for "sale" to Plaintiff (the consumer)  a safe/harmless product; and (4) Defendant Sunmark Products used a third-party distributor to attribute marketing to society (Plaintiff's purchase) their product.  Defendants have adduced no exculpatory clauses about their actions or product that preclude Plaintiffs' negligent misrepresentation claims.

**60.**    Plaintiff has put forward an abundance of facts sufficient to support an inference that  Defendant, Sunmark Products  by McKesson supplied him with a very dangerous product and negligently/willfully neglected to provide that truthful information to Plaintiff what-so-ever!  See *Cummings v. HPG Int'l, Inc.,* 244 F.3d 16, 23 (1st Cir. 2001); See also *High Tides, LLC v. DeMichele,* 88 A.D.3d 954, 959, 931 N.Y.S.2d 377 (2011).

**61.**    Accordingly, this Court should recommend that the District Court allow Plaintiff's *Negligent Misrepresentation*  claims (Count V) proceed in its entirety to trial on the merits.

]

## ***CONCLUSION***

**62.**   Plaintiff advances several theories under which he seeks to hold Defendant, Sunmark Products by McKesson liable for *Negligence or Gross Negligence, Fraud and/or Fraudulent Concealment, and Negligent Misrepresentatio*n under state  and federal Statutes.

**63.**   Plaintiff is able to sustain these claims because they rest on asserted failures to discharge the same purported duties on which Defendants willful and knowing failure to provide any kind of labeling on their product to warn Plaintiff about the very high levels of *"NDMA"* contained in *"Ranitidine" (Zantac)*, and what harm that can do to Plaintiff,  which Plaintiff relied on heavily on a daily basis for several years (at least five years).

**64.**   To support his tort and fraud claims, Plaintiff shows that Defendant, Sunmark Products by McKesson willfully disregarded their duty of care due to avaricious greed for revenue from their produce sales.  Here, Plaintiff asserts that Defendants owed to their customers (Plaintiff) more than a "contractual" duty, but an obligation under the law to keep their customers safe from harmful contaminants like *"NDMA"* contained in *"Ranitidine" (Zantac)*.  See, e.g., Anderson, 424 Mass. at 368 *("failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made")*; See also IMG Fragrance Brands, LLC v. Houbigant, Inc., 679

F. Supp. 2d 395, 408 (S.D.N.Y. 2009) (noting that fraud claims raised in a case that stems from breach of contract must be "sufficiently distinct from the breach of contract claim.").

65.     Here, Plaintiffs' claims rely on the same conduct that forms the basis of his claims. Plaintiff alleges that Defendant, Sunmark Products by McKesson negligently and/or fraudulently misrepresented the potential harm to Plaintiff from daily use of a dangerous product completely unaware it contained unacceptable levels of unsafe and harmful *"NDMA"* contaminants that Defendant was well aware of at the time they made the "sales" of their product to Plaintiff.

66.     Instead, Plaintiff alleges that Defendant, Sunmark Products by McKesson owed him a duty to warn him of the harmful contaminations in their product at the time of marketing/sales to Plaintiff, and the failure to do so was a willful misleading, negligent, or fraudulent action for which they are liable for any and all exposure thereof to Plaintiff.  Because *"NDMA"* contamination once in contact with Plaintiff's internal cells ***did*** do harm, was only capable of doing harm/cause cancer -- - and then kill Plaintiff.   In no way does *"NDMA"* contamination promote health.

67.     Even if Plaintiff's claims were in error,   dismissal is not appropriate or required.   *"At this stage of the litigation, alternative pleading is entirely permissible."*

See, _Int'l Envtl. Mgmt., Inc. v. Envirotron, Ltd.,_ 724 F. Supp. 2d 230, 239 (D. Mass. 2010) (quotations, citations, and alteration omitted).   In fact, the Federal Rules of Civil Procedure expressly allow it. See Fed. R. Civ. 8(a)(3) and 8(d)(3).   Despite any exculpatory provisions from   Defendant, Sunmark Products by McKesson in response to this Complaint, they can be sued for their  own negligence, gross negligence, fraud, and/or willful misconduct.

**68.**   The Court observes, even if the Plaintiff is unable to show that Defendant, Sunmark Products by McKesson conduct amounted to a failure to perform a legally required duty to warn of a harmful product, Plaintiff may be able to show that Defendant, Sunmark Products by McKesson  breached the duty of care that it owed to Plaintiff in the course of carrying out its consumer safety duties.

**69.**   Accordingly, at this stage, Plaintiffs' Complaint meets the legal requirements for his Tort and Fraud claims.

### **_RELIEF REQUESTED_**

**70.**   Plaintiff is seeking an award of $1,000,000 to compensate for his certain death  --- very close call, humiliation, mental and emotional distress, including feelings of fear, anxiety, panic, and nervousness, as well as stomach pains, sleep loss, and migraine headaches he attributes to Defendant's violations of the law, his rights,

willful and intentional failure to put any warning labeling about the reports they possess that disclose facts about their product's *"unacceptable levels of NDMA"* contamination.   Specifically, *"Ranitidine" (Zantac)*, Plaintiff knows exist!    Plaintiff had no warning or way of knowing the cancer causing substance existed at the time he consumed large amounts of *"Ranitidine" (Zantac).*

### ***SETTLEMENT OFFER***

**71.**    Plaintiff is willing to settle this matter out of Court with Defendant, Sunmark Products by McKesson in a Confidential Agreement for $100,000 to withdraw the case with prejudice and all rights to appeal waived.

**April 25, 2021**
    Date

Plaintiff, Joseph A. Favors, pro se
Green Acre East/CPS
100 Freeman Drive
St. Peter, Minnesota (56082)
705-484-9930 Ext: 79327;Message  Only)